## BELL v. EMPLOYERS' LIABILITY ASSUR. CORPORATION, Limited. *

### No. 14747.

Court of Appeal of Louisiana. Orleans.
Feb. 12, 1934.

Edward Rightor, of New Orleans, for appellant.

Johnston Armstrong, of New Orleans, for appellee.

JANVIER, Judge.

Counsel for defendant-appellant concedes that "the question involved in this case is the identical question involved" in Wilson v. Union Indemnity Company et al. (La. App.) 150 So. 309. He states that this appeal was taken because the Wilson Case was settled amicably and no application for certiorari was made. He seeks to convince us of error in the legal conclusion there reached by us, which legal conclusion is succinctly set forth in an editorial syllabus, which reads as follows: "Employee who suffered knee injury, causing permanent total disability, held entitled to compensation for 400 weeks as against contention that compensation was governed by provision limiting compensation to 175 weeks for loss of leg."

Plaintiff, Collins Bell, a colored laborer depending upon his legs in his work, sustained, in the course of his employment and incidental thereto, an industrial injury which, to all intents and purposes, has permanently deprived him of the use of his right leg, though the leg has not been amputated. He seeks compensation for a period of 400 weeks, alleging that he is permanently totally disabled.

Defendant admits all the material allegations of fact made by plaintiff, but contends that the only injury sustained is to one of plaintiff's legs, and maintains that therefore, as a matter of law, compensation should be limited to 175 weeks.

In the district court judgment was rendered in plaintiff's favor for compensation for 400 weeks. Defendant, the insurance carrier of the employer, has appealed, and plaintiff, complaining of the failure of the district court to fix and to tax as costs of court the fees of two medical experts, has also appealed.

The principal controversy arises over the contention of defendant-appellant that, where the employee has sustained one of the specific injuries set forth under subdivision (d) of subsection 1 of section 8 of Act No. 20 of 1914, as amended by the various statutes enacted since, and particularly by Act No. 85 of 1926, the question of disability is of no importance and the payment of compensation is to be governed by the provisions of' the various paragraphs of that subsection and not by the provisions of any of subdivisions (a), (b), or (c), of subsection 1 of section 8, which, he contends, are to be resorted to only when the terms of subdivision (d) are not applicable.

Counsel states in his brief that "the rule of the Act is that subdivision (d) shall be applied where possible and when a case cannot be fitted into any of the specific disabilities provided for by subdivision (d) then the general provisions of (a), (b) and (c) shall operate." He disagrees with the views expressed by us in the Wilson Case and, by inference, with the decisions of the Supreme Court as expressed in Knispel v. Gulf States Utilities Company, Inc., 174 La. 402, 141 So. 9, 12, in Black v. Louisiana Central Lumber Company, 161 La. 889, 109 So. 538, and in the many other cases cited in the Wilson Case, in which it has been held that subdivision (d), providing a fixed schedule of compensation for specific injuries, has no application where the injury has affected earning power. He particularly complains of what he terms the failure of the courts to take into consideration the chronological order of and the reasons for the various amendments of the original statute.

It is very interesting indeed to note that in the statute as originally enacted in 1914 there was no provision made for compensation in the case of an employee whose injuries neither affected the ability to do work of any reasonable character, nor could be classified as one of the specific injuries which rendered compensation payable regardless of. whether there was or was not disability. Boyer v.

Crescent Paper Box Factory, 143 La. 368, 78 So. 596. In the Boyer Case the employee's hair was caught in machinery and she was scalped, but, after recovery from the temporary disabling effect of the accident, her ability to work was found to be unimpaired. It was also found that neither the loss of hair nor disfigurement was included among the specific injuries set forth in what was then a part of subdivision (c) of subsection 1 of section 8 of the act, and it was held that no compensation could be awarded since there was no disability and no specific injury as then set forth.

As a result of that decision there was passed in 1916 Act No. 243, in which was included what is now paragraph 16 of subdivision (d) of subsection 1 of section 8 (Act No. 85 of 1926), which paragraph read as follows: "In cases not falling within any of the provisions already made, where the employee is seriously permanently disfigured about the face or head or where the usefulness of a member or any physical function is seriously permanently impaired, the court of proper jurisdiction as hereinafter provided may allow such compensation as is reasonable in proportion to the compensation hereinabove specifically provided in the cases of specific disabilities above named, not to exceed fifty per centum of wages during one hundred weeks."

In Mack v. Legeai, 144 La. 1017, 81 So. 694, the Supreme Court considered a case in which an employee lost the use of his leg, which, however, was not amputated. The district court held that compensation should be awarded for the specific injury and that, therefore, recovery should be limited to 100 weeks, but on appeal the Supreme Court, holding that the paragraph which had been added in 1916, and which we have quoted above, "applies only to cases of injuries that do not produce disability to work," increased the award by granting compensation for 300 weeks, which at that time was the maximum period for permanent total disability.

In 1922 the act was amended by the passage of Act No. 43, in which it is provided that: "The permanent total loss of the use of a member shall be equivalent to the amputation of the member."

Counsel states that this amendment (1922) was passed because the Legislature "considered that a workman should not get more for the impairment of a leg than he could for the loss of a leg."

If that was the purpose of the amendment, then that purpose was overlooked by the courts, which, after it went into effect, continued to award compensation where there was disability on the basis of those subsections which controlled awards for disability, rather than on that subsection which controlled awards for specific injuries.

In Reeves v. Dietz et al., 1 La. App. 501, this court considered such a contention and rejected it, saying: "* * * Sub-section D relates to injuries without regard to the effect upon earning capacity, whereas Subsection C controls when the injury produces 'partial disability to do work of any reasonable character.'"

See, also, Blythe v. Askew et al., 2 La. App. 415; O'Donnell v. Fortuna Oil Co., 2 La. App. 462; LeGrand v. U. S. Sheet & Window Glass Co., 2 La. App. 549; Davis v. Gillis, 2 La. App. 567; Chandler v. Oil Fields Gas Co., Inc., 2 La. App. 778.

As particularly illustrative of the principle followed since the amendment of 1922, we call attention to Black v. Louisiana Central Lumber Company, 161 La. 890, 109 So. 538. There the Supreme Court held squarely that where the ability to work is affected, the recovery is governed by the disability subsections rather than by the specific injury subsections. Counsel concedes this, but asserts that, since the courts were still unaware of the purposes of the Legislature, there was adopted in 1926 another amendment (Act No. 85), a portion of which has now become paragraph 15 of subdivision (d) of subsection 1 of section 8, and which reads as follows: "In all cases involving a permanent partial loss of the use of function of the member mentioned hereinabove, compensation shall bear such proportion to the amounts named herein for the total loss of such member as the disability to such member bears to the total loss of the member, provided that in no case shall compensation for an injury to a member exceed the compensation payable under this act for the loss of such member."

We are told that these various amendments, considered together and chronologically and in connection with the jurisprudence, show that the legislative intent is: First, that where there is a specific injury the compensation shall be based thereon rather than on the period of disability; second, that where there is a specific injury which does not amount to a total loss of the use of a member, such as a hand or a foot, etc., the compensation shall be proportionate to what would have been allowed had the use of the member been entirely lost; third, that where the use of the member has been completely lost, but the member has not been amputated, the com-

pensation shall be the same as though the member had been amputated; and, fourth, that in no case shall the compensation exceed that which would have been allowed for the loss or amputation of the entire member.

Our attention is directed to the fact that the opening paragraph of section 8 (subsection 1), as it was amended by Act No. 216 of 1924, reads as follows: "That for an injury producing disability compensation shall be paid under this Act to an injured employee in accordance with the following schedule of payments."

We are also requested to note that in the amendment of 1926 (Act No. 85) the words "producing disability" were omitted and that the paragraph (subsection 1), as it is now in force, reads as follows: "That compensation shall be paid under this act in accordance with the following schedule of payments."

Each of the subdivisions (a), (b), and (c) of subsection 1 of section 8 now contain the phrase "for injury producing * * * disability," etc.; whereas, the opening sentence of subdivision (d) makes no reference to disability, reading as follows: "In the following cases the compensation shall be as follows."

Counsel for defendant-appellant attaches great significance to this change between the acts of 1924 and 1926, contending that it indicates that under the law "as it exists today it is only necessary that there be disability produced in order to recover under subdivisions (a), (b) and (c) to each of which that qualification is added and it is not necessary that disability be produced in order to recover under subdivision (d)." We feel that he is quite correct in his contention, but we do not understand that, as a result of this change, the specific injury subsection was given precedence over the disability subdivisions, but rather that the contrary was the intention of the legislators.

The purpose of the framers of the act was to provide for an employee whose earnings are discontinued, a fund on which he may subsist until he can return to work. That was the main object. The principal loss which was in the eyes of the legislators was the loss of earnings, the disability to work, but, though that was the main object, there was a secondary object because it was seen, of course, that there might be specific injuries without resulting disability and it was realized that it would be unfair to deprive an injured employee of his right to proceed in tort for damages ex delicto and yet to provide no recovery in compensation in such cases. Therefore the specific injury subsections were included, not to take precedence over the disability sections, but to supplement them.

Counsel refers in his brief to the fact that the Legislature inserted paragraphs 14 and 15 of subdivision (d) of subsection 1 of section 8 "in order that it might appear clear to the courts that in cases of specific injuries under (d), or less than specific injuries involving the entire limb, disability was not to be considered under (d), by the act of 1926 eliminated 'producing disability' from the general opening sentence of section 8 and made that phrase apply exclusively to injuries coming under (a), (b) and (c) and not to injuries under (d)." He then suggests that if the court will now read over the changes made by paragraphs 14 and 15, it will appear that those paragraphs are "to apply exclusively to subdivision (d) and those paragraphs, just like the balance of subdivision (d), make no reference to disability at all."

We agree with everything that appears in the above quotations from counsel's brief; we agree that paragraphs 14 and 15 in no way refer or apply to injuries which produce disability to work; and therefore feel that counsel is inconsistent when he argues that the proviso which is inserted in what is now paragraph 15 of subdivision (d) governs and controls compensation for injuries which produce disability. The proviso to which we refer is the last portion of paragraph 15 and reads as follows: "* * * provided that in no case shall compensation for an injury to a member exceed the compensation payable under this act for the loss of such member."

In our opinion in Wilson v. Union Indemnity Company, supra, in holding that paragraphs 14 and 15 do not in any way modify subdivisions (a), (b), or (c), we said: "It appears to us that the fallacy in the defendants' position is that they contend that paragraphs 14 and 15 of subsection (d) modifies the entire Compensation Act. If it were the intention of the Legislature to modify and limit subsections (a), (b), and (c) by subsection (d), appropriate language would have been employed to do so. Instead, it deliberately omits the word 'disability' in subsection (d), and carefully repeats, in each of the three prior subsections (a), (b) and (c), the clause 'disability to do work of any reasonable character.'"

We have diligently endeavored to understand counsel's reasoning, but have not reached the conclusion for which he contends. In Knispel v. Gulf States Utilities Company, supra, the Supreme Court said, as we quoted in Wilson v. Union Indemnity Company, su-

pra: "We adhere to the ruling in the Black Case, and consider it decisive of the inapplicability of subsection (d), par. 16, to this case." And to make its meaning more clear the Supreme Court also said: "The injury suffered by plaintiff is an injury affecting his capacity to work. Wherever such is the case compensation therefor is not governed by subsection (d), par. 16, of section 8 of the act of 1928, but by those provisions of the act, relating to compensation for injuries producing disability to work, such, for instance, as subsections (a), (b), and (c) of section 8. This is made clear by the ruling in Black v. Louisiana Cent. Lumber Co., 161 La. 889, 109 So. 538, 540."

In the Wilson Case, supra, we gave much thought to the entire matter and said: "* * * * an interpretation of the statute as amended leads inexorably to the conclusion that, if capacity to do work of a reasonable character is affected, the fact that the injury is to a member of the body is unimportant, and compensation is due under subsections (a), (b), or (c)."

If counsel's statement of the reasons for the various amendments is correct, then we find it difficult to understand why the said amendments did not clearly and unequivocally state that there should be no recovery under the disability sections where there is a specific injury. If the Legislature was not satisfied with the interpretations placed by the courts upon section 8, and if it continued to be dissatisfied with the interpretation placed upon each of the amendments, nothing would have been simpler than to have so framed an amendment as to give the specific injury subsections precedence over the others. That was not done.

We are still of the opinion that under the law as it exists now the compensation to be paid for an injury adversely affecting ability to do work of any reasonable character is determined not by the specific injury subsections, but by the disability subsections.

After this matter had been submitted, our attention was called to a decision rendered on January 3, 1934, by the Court of Appeal for the Second Circuit in the matter of Calhoun v. Meridian Lumber Co., 151 So. 778, 779, in which it was held: "That employee's capacity to work is affected by injury does not render inapplicable provisions of act allowing fixed compensation for specific losses and bring case under provisions covering general disability. * * *" (Syllabus).

In that decision the court indicated its inability to accept as sound our views as expressed in Wilson v. Union Indemnity Company, supra. Because of these divergent views, counsel for defendant suggests that we should certify to the Supreme Court this matter and request the instructions of that court.

We realize that the question is one on which courts may well differ, and we confess that in view of the present state of the jurisprudence there is an urgent need for a clarifying opinion by the court of last resort. Nevertheless, we adhere to our original view, and, since that view was expressed prior to the decision rendered by our brothers of the Second Circuit in the Calhoon Case, we prefer to reiterate what we said in the Wilson Case. In any event, the question at issue must find its way to the Supreme Court because of the effect of section 11 of article 7 of the Constitution of 1921, in which it is provided that: "Where the application (for writ of certiorari) is based solely upon the ground that the decision of the question of law involved is in conflict with the jurisprudence of * * * another Court of Appeal upon a question not yet decided by the Supreme Court * * * the application shall be granted as a matter of right."

The fees of the two medical experts should have been taxed as costs of court. Wright v. Fuller Const. Co. (La. App.) 145 So. 300, 303. That they 'were not appointed by the court, but were summoned by one of the parties, does not affect their status as experts. We said in the Wright Case: "While it is true that the judge of the trial court did not appoint these doctors, they having been summoned by the plaintiff as witnesses, this circumstance does not affect their status as experts. Suthon v. Laws et al., 132 La. 207, 61 So. 204; Levy v. McWilliams et al., 13 La. App. 444, 127 So. 761, 129 So. 170; Act No. 19 of 1884."

However, considering the fact that there was little controversy over the physical condition of plaintiff and the further fact that the experts are agreed as to his condition and submitted their agreement in writing, we feel that the amount claimed, $25 for each, is somewhat excessive, and that $15 to each should be sufficient.

The judgment appealed from is amended by the allowance to Dr. Genella of a fee of $15 and an allowance to Dr. Gilbert of a fee of $15, and as thus amended the judgment is affirmed, at the cost of appellant.

Amended and affirmed.