### CUSTER v. NEW ORLEANS PAPER BOX FACTORY, Inc., et al.*
### No. 16401.

Court of Appeal of Louisiana. Orleans.

Nov. 4, 1936.

*Rehearing denied Dec. 14, 1936.

Prowell & McBride, of New Orleans, for appellant.

Edw. Rightor, of New Orleans, for appellees.

JANVIER, Judge.

Plaintiff, seeking recovery for compensation under the provisions of Act No. 20 of 1914, as amended, claims to have been totally and permanently disabled as the result of accidental injury, and prays for judgment for 65 per cent. of his weekly wages for a period of 400 weeks.

Defendant, admitting all of the essential facts, contends that plaintiff's recovery should be limited to 65 per cent. of his weekly wages for 200 weeks, maintaining that, since the said injuries consist solely in the loss of his right arm, his recovery is controlled by subdivision 1, paragraph (d), of section 8 of the act, as amended by Act No. 242 of 1928, subparagraph 6 of which provides (page 357) that the injured employee shall receive "for the loss of an arm, sixty-five per centum of wages during two hundred weeks."

We find in the record an agreement as to the facts, the important features of which agreement are the following:

"* * * It is agreed between counsel for plaintiff and defendant, that the plaintiff was injured under such circumstances that he is entitled to compensation. It is agreed that the compensation that he would be entitled to under the law is $9.10 and that the defendant has been remitting at the proper time that compensation to the plaintiff. It is agreed that the injury to the plaintiff was the loss of his right arm between the elbow and the shoulder and that the doctors would testify that he was completely cured on November 13, 1935. * * *

"It is further agreed that plaintiff is a manual laborer with a grammar school education, that he is right handed, that he was hurt on his first job, cannot write his name with his left hand, and that he would testify he can do no other work except that of a laborious character.

"* * * It is further agreed that there was expended on the plaintiff for doctors, hospital, and nurses, $459.75 and plaintiff's and defendant's counsel agreed that the defendant should pro-rate the $250.00 medical allowance under the act amongst these bills and that has been done."

There are thus presented two questions: First, whether, when there is sustained one of the specific injuries which form the basis of recovery under paragraph (d) and disability also results, the recovery should be controlled by that paragraph or by paragraphs (a), (b), or (c), under which, where there is disability, recovery is awarded in accordance with the period of disability, with a maximum of 400 weeks where the disability is total and permanent. The second question of whether, even conceding that the disability provisions of the act have application, the condition of plaintiff, considering his education, training, et cetera, renders it proper to say that the loss of his right arm has rendered him totally and permanently disabled within the contemplation of the law which defines total and permanent disability as the permanent incapacity to do "work of any reasonable character."

We shall consider these questions in the order in which we have stated them.

No question presented under the compensation laws since the original enactment in 1914 has given rise to so much conflicting thought and to so much heated discussion as that which is now before us. One view is that it was the purpose of the framers of the statute to make disability—and disability alone—the basis of recovery where there is disability, and this view was adopted by this court in Wilson v. Union Indemnity Co., 150 So. 309, 312. Those who hold this view feel that the specific injury paragraph, to wit, (d), should not be given precedence over the disability paragraphs (a), (b), and (c), but should be construed as supplementary thereto and should only be made use of where recovery cannot be had for disability; in other words, that it may well happen that an employee may sustain the loss of a member of his body, and, nevertheless, be able to do work of a reasonable character and may, therefore, not be entitled to recover under the disability par-

agraphs, and that such a sufferer should receive compensation in some measure commensurate with the physical loss which he has sustained, though his earning capacity may have been affected only slightly, if at all.

Those who hold to the other view believe that paragraph (d) should be given precedence where there has been sustained the loss of a member and that, where there is such specific injury, compensation should be awarded for that injury regardless of the period or extent of disability. This view was followed by the Court of Appeal for the Second Circuit in Calhoon v. Meridian Lumber Co., 151 So. 778.

When that decision was rendered the Supreme Court granted a writ of certiorari, and, after consideration, affirmed the decision awarding compensation on the basis of the specific injury rather than on the basis of disability. 180 La. 343, 156 So. 412.

In McGruder v. Service Drayage Co., 158 So. 252, we found a case which we thought presented the question now under consideration, and, because of our interpretation of the decision of the Supreme Court in the Calhoon Case, we abandoned the views we had expressed in the Wilson Case and followed what we believed to be the conclusion announced by the Supreme Court in the Calhoon Case.

But our interpretation of that opinion proved to be incorrect, for, after granting a writ of certiorari, the Supreme Court in 183 La. 75, 162 So. 806, 811, reversed our decision in the McGruder Case and held that the Calhoon Case was not authority for the view that paragraph (d) should be given preference over paragraphs (a), (b), and (c), and that the conclusion arrived at in the Calhoon Case had resulted solely from the fact that in that case plaintiff had not prayed for compensation under the general disability paragraphs of the act.

That the opinion rendered by the Supreme Court in the McGruder Case holds that the employee, who has sustained a specific injury by the loss of a member, may nevertheless claim compensation on the basis of disability, is made very evident by the dissenting opinion of Mr. Chief Justice O'Niell, who, in discussing the majority opinion, says that if that view is to become the law, as it has so become, "hereafter, an employee who suf-

fers the loss of a thumb, finger, toe, or other member, will have the option either to claim the compensation for the fixed period for the loss 'of such member, or to claim compensation for the period of disability, not to exceed 300 weeks, or 400 weeks, as the case may be."

The question was next considered in Barr v. Davis Bros. Lumber Co., 183 La. 1013, 165 So. 185, 188, and there the Supreme Court discussed the many earlier cases and squarely held that disability is always to be looked for first and compensation based thereon under paragraphs (a), (b), or (c), and that paragraph (d) was inserted in the statute only that compensation might be provided for a specific injury which, because of the circumstances, condition, and education surrounding the injured party, might not produce disability. There the Supreme Court said:

"The main object of the legislators in enacting the Employer's Liability Act was to provide an employee, whose wages were discontinued as a result of an injury sustained while serving his master, with funds to subsist on until he could return to work. But while they had in mind as their main object the disability of the injured employee and the necessity of funds to sustain himself during such disability, they also had another object in view, that there might arise specific injuries such as severance or amputation of members or disfigurement, etc., without disability, and having by the statute deprived the employee of the right to recover in tort, the legislators deemed it just and wise that an employee should have the right to compensation in such cases; hence the provisions of the act under paragraph (d), where disability is not mentioned.

"A careful review of Act No. 20 of 1914, as amended, and the jurisprudence on section 8 thereof convinces us that it was not the intention of the Legislature to have paragraph (d) supersede and take precedence over the disability sections, but rather to supplement them."

Counsel for defendants protest that the Davis Case is not authority for this view and argue that, in that case as well as in each of the other cases in which recovery was permitted under paragraph (d), the loss of the specific member was accompanied by other injuries and that, thus, in none of them did the court consider a claim for the loss of a single member, but that, in each of them, the combination

of injuries resulted in such disability as warranted the application of paragraphs (a), (b), or (c), rather than of paragraph (d). It is stated that in Wilson v. Union Indemnity Co., supra, it was not the amputation of the leg which was being considered, because the leg was not amputated, but was so badly injured that it was contended that it caused greater disability than would have resulted from amputation. Bell v. Employers' Liability Assurance Corporation, Ltd. (La.App.) 152 So. 766, 770, is also pointed to as a case involving general disability rather than the loss of a specific member. In Knispel v. Gulf States Utilities Co., 174 La. 401, 141 So. 9, the Supreme Court considered the compensation award to be made for the loss of an eye, but found that not only the eye had been lost, but that, as the result of that loss, the other eye had also been much affected. In Barr v. Davis Bros. Lumber Co., supra, counsel contends that the award based on total permanent disability was justified because the injuries were not confined to the leg alone.

It is true that in each of those cases, as counsel maintain, the injury was not confined to a specific member of the body of the injured person. Nevertheless, we feel that the language used by the Supreme Court in the McGruder Case and in the Barr Case is so clear as not to permit of interpretation otherwise than as a plain expression in favor of the application of paragraph (a), (b), or (c), where there is disability. That the interpretation placed by us upon the Barr decision is the correct one is evidenced by the concurring opinion of Mr. Justice Higgins, wherein he said: "I fully concur in the view expressed in the majority opinion, which is further fortified by the reasons stated in the cases of Wilson v. Union Indemnity Co. et al. (La.App.) 150 So. 309, and Bell v. Employers' Liability Assur. Corporation, Ltd. (La.App.) 152 So. 766."

We feel that, even if we entertain contrary views concerning the application of the statute, we would not be within our prerogative in expressing those views because of what the Supreme Court has said. But we entertain no such contrary views, and, if the matter were now being presented to us for the first time as "res nova," we would look upon it as we did in Wilson v. Union Indemnity Co., supra, in which we concluded that: "If capacity to do work of a reasonable character is affected, the fact that the injury is to

a member of the body is unimportant, and compensation is due under subsections (a), (b), or (c); and, on the other hand, if capacity to work is unaffected, the employee may still recover a certain amount under the schedules in subsection (d) if the injury has caused a severance or amputation of a member or the loss or impairment of the use of function of a specified member of the body."

Our views on the subject were again set forth fully and completely in Bell v. Employers' Liability Assurance Corporation, Ltd., supra, in which we discussed the history of the statute and of the various amendments and said: "We are still of the opinion that under the law as it exists now the compensation to be paid for an injury adversely affecting ability to do work of any reasonable character is determined not by the specific injury subsections, but by the disability subsections."

We noted in that case that our brothers of the Second Circuit had, in Calhoon v. Meridian Lumber Co. (La.App.) 151 So. 778, refused to agree with our conclusion, but found ourselves unable to change our views on the subject.

We conclude, then, that if plaintiff cannot, because of the loss of his arm, do work of any reasonable character, he is entitled to recover for permanent total disability, and we thus pass to a consideration of the effect of his injury upon his earning capacity.

We note from the agreed statement of fact "that the injury to the plaintiff was the loss of his right arm between the elbow and the shoulder"; that he is "a manual laborer with a grammar school education, that he is right-handed, that he was hurt on his first job, cannot write his name with his left hand and that he would testify he can do no other work except that of a laborious character." In other words he is an unskilled, inexperienced laborer. The question, then, is whether the loss of a right arm by such a person incapacitates him, within the contemplation of the compensation law, from doing work "of any reasonable character." It is evident that in his present status and condition the injured party can do no work except that of a laborious character, and we find it difficult to conceive of any kind of laborious work which, without the use of his right arm, he could be reasonably expected to obtain. We find cited no case

involving workmen's compensation in which a laborer, unskilled and uneducated, had completely lost an arm or a leg and in which the court considered the effect of the workmen's compensation laws. But we do find that we, ourselves, have at least twice considered the right of a laborer to recover under a disability insurance policy under such circumstances.

In Marshall v. Metropolitan Life Insurance Co. (La.App.) 164 So. 441, the plaintiff was an unskilled negro laborer who permanently and totally lost the use of one leg. It was contended that the policy provision under which he claimed to be entitled to recover depended upon his being unable to perform "any work for compensation or profit." We held that such a provision did not mean any work of any character, but meant work of a character which the status, training, and experience of the injured party rendered it possible for him to perform, and that, if the interpretation contended for by the defendant should be adopted, it "would render an insurance policy of no practical benefit to an illiterate insured who earns his livelihood by hard manual labor and is in the physical condition that the plaintiff finds himself to be as the result of the accident." Applying that thought to the situation before us, we conclude that, if an unskilled laborer loses a leg or an arm and, therefore, can no longer do the work which he has been accustomed to do, he should be held to be unable to do any work of any reasonable character, because, to otherwise construe the paragraph of the Compensation Act with which we are now concerned, to paraphrase the language quoted by us in the Marshall Case, would render the Compensation Act of no practical benefit to an illiterate insured, et cetera.

In White v. Metropolitan Life Insurance Co., 166 So. 655, 656, we considered a similar situation and held again that, because the injury made it impossible for the unskilled, untutored laborer, whose case we then considered, to perform work of the kind to which he was accustomed, he could recover under the policy, which made recovery dependent upon "receipt of due proof of total and permanent disability."

That the compensation statute, in the words "work of any reasonable character," contemplates work of the kind for which the injured party is fitted by status, training, and education, was held by the Court of Appeal for the First Circuit in McQueen v. Union Indemnity Co., 18 La.App.

612, 136 So. 761. The same view was also adopted in Franklin v. Roger Co., 2 La.App. 764.

It is conceded that the full amount payable under the statute for medical and hospital attention has already been paid, and that, therefore, nothing further is due on that part of the claim.

■ Though American Employers' Insurance Company, the carrier of the compensation insurance of New Orleans Paper Box Factory, Inc., was made party defendant, no judgment was rendered against that corporation. It appears obvious that the judgment was erroneous in that regard also.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, amended so as to run solidarily against New Orleans Paper Box Factory, Inc., and American Employers' Insurance Company, and so as to award the plaintiff, Forrest L. Custer, the sum of $9.10 per week for 400 weeks, subject to a credit of 36 weeks already paid, with legal interest from maturity on all past-due installments.

All costs to be paid by defendant.

Amended and affirmed.

