McBride, judge.
This appeal was perfected by plaintiff, Ernest Weber, from a judgment dismissing his suit against his employer, Kieck-hefer Container Company, and its liability insurance carrier, American Mutual Liability Insurance Company, for workman’s compensation for 400 weeks at $20 per week (less 100 weeks compensation already paid). Plaintiff suffered an accident in the plant of Kieckhefer Container Company on or about August 19, 1946, which resulted in the loss of the sight of his left eye, and he claims that he is totally, permanently disabled from doing work of any reasonable character, within ■ the contemplation of the Workmen’s Compensation Act.
In their answer, defendants deny that plaintiff is totally, permanently disabled. They aver that he was paid compensation ■at the rate of $20 per week for 100 weeks for the loss of an eye, under Section 8, Subsection 1, Paragraph (d), Subpara-graph (9) of the Act, as amended by Act No. 242 of 1928, p. 357, and that he is entitled to no further compensation. The answer alleges that plaintiff has returned to his former employment as general maintenance mechanic in the plant of Kieckhefer Container Company, and has been working continuously at that job, up to the time of the filing of the answer, at a higher rate of pay than he received at the time of the accident.
Weber was hired as a maintenance mechanic, and as such he adjusted machines about the plant, built a tool room, a die room, and a shop, which work lasted for about six weeks; thereafter, Weber did general repair work in the plant. If a machine was out of adjustment, he tried to adjust it; if there was a breakdown, the work would be sent out to be done. Weber did some brazing and welding work on small adjusting rods, but when any part of a machine broke, it would be sent out to an independent machine shop. Weber did this class of work up until the accident, which occurred while he was chipping silica glue from a cylinder. A piece of the dry glue became lodged in his left eye.
Plaintiff was under the care of Dr. J. Henry Larose, an eye specialist, for a period of approximately ten months. 'Dr. Larose and Dr. Kotz Allen, also an eye specialist, who made a subsequent examination of plaintiff, testified that Weber has completely lost the usefulness of his left eye, except for the preception of light. Both physicians agree that a person with only one eye does not 'possess normal depth perception, and would labor under a handicap in performing precision work. Dr. Allen stated he would not recommend that Weber assume the duties of a maintenance man, as that kind of work would entail danger to himself and those working with him.
*564 The payroll record of Weber shows that on the date of the accident he was classified as “maintenance” at a rate of -pay of $1.05 per hour. After the accident, he continued to work for a period of three weeks. He did not again work until the week ending May 11, 1947, -during which week he put in forty hours at a rate of pay of $1.13 per hour. He was then off the job until September, 1947, when he returned to work and was classified, as “clerical” at 680 per hour during the first week, and at 780 per hour during, the three succeeding weeks. Weber was then given back his old job, and was classified as “maintenance” at a rate of, pay, for .the week ending October 19, 1947, of $1.06 per hour, and thereafter, through the week ending October 17, 1948, he received $1.23 per hour. Since then, and up to the date of the trial below, he was still classified as “maintenance” with a rate of pay of $1.30 per hour.
It is the plaintiffs contention that he is totally disabled to reasonably perform the duties he performed prior to the accident, but that if the court should find he is reasonably able to perform such duties, nevertheless, he is to be considered as permanently and totally disabled, because he cannot perform the duties of his' occupation without grave and serious danger to himself and his fellow employees.
The point whether Weber presently performs the same type of work he was 'engaged in prior to the accident is disputed. He maintains that he has done no mechanical maintenance work on the machinery since the injury, and that his services have been confined to performing “piddling odds and ends jobs like painting.” When asked on cross examination if he was doing the work satisfactorily, Weber answered: “Well, that would be up to the superintendent to answer for that.”
Robert F. Loving, day foreman of Kieck-hefer Container Company, testified that Weber worked under him; that-when he came back to work in September, 1947, the Kieckhefer Container Company plant had been moved from New Orleans to the Parish of Jefferson; that when Weber first came back, he was given clerical work, for about one month, and thereafter he was assigned to his old job at the maintenance pay rate, and ■ did the same kind of w-ork -that he performed prior to his injury, such as making adjustments and repairs on machines ; he repaired a Hooper Printer Slot-ter, made gear adjustments on the timing of the truck; built a house on the outside and a waiting room for the employees. He also made shelves for the storeroom, and did tow motor repair work. Loving further testified that after the plant had been moved to Jefferson Parish, Weber did no welding or brazing, but that he did the same character of work around the machines that he had done before; that the plant now maintains a full machine shop where mechanical breakdowns are repaired, and that any welding or brazing work which the machines may require is now done in the machine shop.
The office manager, Rene Labruyere, testified that he has seen Weber working around the machines in the plant every" day as often as necessary.
John Gilbert, the resident manager of Kieckhefer Container Company for about fifteen years, téstified that Weber was originally employed to do all of the small jobs that might be required in.the plant.
There is some testimony in the record by Thomas A. Russell, an affiliate of Weber’s labor union, to the effect that when Weber went back seeking his old job, a Mr. Johnson, who was superintendent of the plant at the time, refused to give it to him, stating as the reason that Weber, because of impaired vision, might further injure himself. When Johnson refused to rehire him, Weber promptly lodged a grievance report with .the union, which is filed in evidence. This report makes no mention that Johnson would not take Weber back because of any fear that he could not do the work, but the report is to the effect that when Weber reported for work he was told that there were too many mechanics, and, therefore, his services could not be used, in the plant.
Johnson, who .was working for another concern at the time, of .the trial, was not produced as a witness by defendants, and *565 plaintiff’s counsel, argue that a'n inference unfavorable to defendants should .be drawn from this circumstance., We do not attach any importance to the failure to produce Johnson as a witness. Even if it be accepted as a fact that Johnson refused to employ Weber because he, felt that W.eber was incapable of holding down his jo'b, such, fact would be unimportant,, for other officials of the Kieckhefer Container Company, were also skeptical regarding Weber’s ability to do maintenance work.
Gilbert testified that when Weber made the complaint to the union, he, Gilbert, felt that Weber might not be able to work back into his original job. He was first given clerical work so that he could gradually "find himself” and prove to both himself arid to his employer that he would not injure himself or others, and that his superiors, after a time, were satisfied with his work, increased his pay, and in about two months felt that he was ■ entitled to be restored to his former rating, and that he was put back at the same work he did prior to the accident, with the same classification, “maintenance” mechanic. ;
The evidence of defendants’ three witnesses impressed the trial judge and prompted the conclusions reached .in the case, for we find that the judge, in his written reasons for judgment,, commented favorably upon their testimony. There is no doubt in our minds that plaintiff is- fully capable of performing, and is performing, substantially and efficiently, the duties of’a maintenance mechanic to the, full satisfaction of his employer. In the nineteen or twenty months since . Weber has -been back on his job, any fears that his superiors may have entertained that he could not do the work, or might injure himself or some other employee, have been entirely dissipated. The plant officials seem sincere in their statements that Weber is competent,, and that they believe he is doing as good, or better, a job than he did before, and. that they are entirely satisfied with him and expect him to continue to do his full line of duties.
We think, under the circumstances, that whatever claim Weber has arises under the specific loss clause of the act Section ';8, Subsection. 1, Paragraph (d), Subparagraph (9)..
It is well settled jurisprudence that where a workman loses 1 a: member of his body by amputation, and is thereby rendered incapable of doing work of any reasonable character, his compensation is ¡controlled by Section 8, Subsection 1, Paragraphs (a), (b), arid (c) of the act, and not by Paragraph (d) of that Section, which applies regardless of the workman’s capacity to perform work, and without reference to the duration of the’ disability. Custer v. New Orleans Paper Box Factory, La.App., 170 So. 388; Ingram v. Meridian Lumber Co., La.App., 178 So. 187; Jones v. International Paper Co., La.App., 11 So.2d 555; Pourciau v. Board of Commissioners of Port of New Orleans, La.App., 12 So.2d 36; Mitchell v. T. J. Moss Tie Co. et al., La.App., 27. So.2d 385; Washington v. Independent Ice & Cold Storage Co. et al., 211 La. 690, 30 So.2d 758.
In McCain v. Fohs Oil Co., La.App., 6 So.2d 197, 198, the Court'of Appeal, First •Circuit, said: “What the Court is concerned with principálly in a case of this kind is the type of work the injured erriployee was -performing at the time' of the accident causing his injury, and, is that the only kind of work which, by virtue of his education, his status in life, his training and experience, he is able to do. If the type or kind of work is such that because of the loss of one'eye he can no longer perform his du■’ties or can only perform them With danger to' himself, he is entitled to recover compensation for total, permanent disability under the general disability provision of the statute. Section 8, Subsection 1, Paragraph (b) of Act No. 20 of 1914, as amended by Act No. 242 of 1928. .If, on the other hand, .the work is of such character that it can be satisfactorily performed by him with the vision from the remaining eye, and without risk, he is entitled to recover compensation under the specific provisions of the act which limits the recovery, to 100 weeks for the loss of an eye. Section 8, Subsection 1, Paragraph (d), Subparagraph (9) of Act No. 242 of 1928. In other words, for the loss of an eye, even though there be no resulting disability, the injured employee is *566 ipso facto entitled, under the specific provisions of the Act, to 100 weeks compensation, which, in effect, is a sort of offset for what he might have recovered in a tort action, the right to pursue which he has been deprived of by the statute. But if the loss of the eye produces disability, he can recover compensation under the general provisions of the statute, during such disability, depending of course upon its nature and duration. The distinction herein made applies not only to the loss of or injury to an eye but to any of the various members of the body enumerated under Paragraph (d), Subsection 1, Section 8 of Act 242 of 1928. See Barr v. Davis Bros. Lumber Co., 183 La. 1013, 165 So. 185.”
The courts have literally construed the words “work of a reasonable character,” as used in the disability provisions of the act, to mean that class of work for which the claimant is fitted by education, training, and status, and' such as he was performing or was accustomed to perform before the occurrence of his injury. McQueen v. Union Indemnity Co., 18 La.App. 612, 136 So. 761; Knispel v. Gulf States Utilities Co., 174 La. 401, 141 So. 9; Custer v. New Orleans Paper Box Factory, supra; Stieffel v. Valentine Sugars, Inc., et al., 188 La. 1091, 179 So. 6; Hibbard v. Blaine et al., La.App., 183 So. 39; Anderson v. May, La.App., 195 So. 783; Sumrall v. E. I. DuPont de Nemours & Co., La.App., 1 So.2d 430; McKenzie v. Standard Motor Car Co. et al., La.App., 15 So.2d 115; Henry v. Higgins Industries, Inc., La.App., 24 So.2d 402.
The instant case is analogous to Falgoust v. Maryland Casualty Co. et al., La.App., 22 So.2d 312, 315, decided by this court. There a carpenter suffered a permanent, partial loss of the use and function of his left arm to the extent of 37% but was successful in securing employment as a skilled carpenter with another employer. Claiming that he was totally and permanently disabled from doing work of any reasonable character, he instituted suit seeking the recovery of 'compensation for 400 weeks. The evidence showed-that while the plaintiff was a good carpenter and particularly useful in finishing work, he was unable to perform all of the duties required of a journeyman carpenter, such as climbing scaffolds, etc. In • holding that plaintiff’s claim was limited to the specific loss clause, we said: “ * * * Here, the evidence shows that plaintiff is employed as a carpenter and is earning the same wage which he received prior to the accident. Therefore, it cannot be said that his .injury has been such as to deprive him of engaging in his usual trade or occupation. The Employers’ Liability Act authorizes the courts to award compensation for permanent total disability only where the employee (by reason of his injury) is unable to do work of any reasonable character which means, according to liberal judicial interpretation, work of the same or similar nature for which the workman is fitted by education and previous experience. Can it be said that plaintiff is not doing work of the same or similar character merely because he and his foreman express doubt that he can perform all of the duties -required of a journeyman carpenter when he is actually doing the work required of him as a carpenter in his present employment to the satisfaction of his employer? We think not. '
In Boulanger v. Liberty Mutual Ins. Co., La.App., 31 So.2d 888, 889, (certiorari denied) a glass cutter, who had lost an arm, sued his employer’s insurer, claiming compensation for permanent, total disability, notwithstanding that he was still working for the same employer as a glass cutter. The record disclosed that while plaintiff could perform the work, it was necessary for him to have some assistance in his duties, and that without help he was unable to adjust his glass cutting tool. The court said: “In all of the cited cases wherein workmen with amputations were allowed permanent disability benefits, the evidence showed that the claimants were unable to return to duties similar to those that they performed when injured. But in the present case the record abundantly shows, beyond any doubt, that Boulanger is capable of carrying on substantially and efficiently the duties of a glass cutter, and is performing his work in a satisfactory manner. Since he has sustained the loss of a member of 'his body unaccompanied by inability to *567 perform the duties of his employment, the claim against the defendant arises under the specific loss clause, which provides for payment of two hundred weeks compensation for loss of an arm. * * * ”
It is contended that Weber is at the mercy of his employer, and his counsel express the belief that Kieckhefer Container Company will dismiss Weber when this case is finally decided, and that in that event he will be unable to obtain other employment. Counsel state that the employer’s unwillingness to reemploy Weber after the accident fortifies that opinion. They maintain that had it not been for the coercion brought to bear upon the employer by the intervention and solicitation of the labor union’s grievance committee, Weber would not have been accepted for reemployment by the company.
It is self-evident that a man having only one eye cannot see as well as a person hav-> ing two normal eyes, and that if Weber’s services should be terminated by the Kieck-hefer Container Company for any reason, it may well be that he will encounter sturdy competition from able-bodied workmen when seeking other employment. But, in a case of this kind, that is not the test. Our only concern is whether Weber can do the work of his particular calling. Moreover, ■counsel’s opinion is based upon pure speculation, as there is nothing whatever in the record tending to show, or even remotely indicating, that Weber’s employer has any ■intention of discharging him because of his physical condition. On the contrary, the plant officials were unanimous in saying that they are fully satisfied with his work.
But, at any rate, the evidence in the case overwhelmingly demonstrates that Weber, with his one eye, can now do his work substantially and as efficiently as before the injury, and, after a careful study of the •matter, by no stretch of reasoning can we be led to the conclusion that he should be characterized as being a totally and permanently disabled workman.
The judgment appealed from is affirmed.
.Affirmed.