JANVIER, Judge.
Defendants, Sunnyland Contracting Co., Inc., the employer, and Coal Operators Casualty Company, the workmen’s compensation insurance carrier of the said employer, appealed suspensively and de-volutively from a judgment of the Twenty-fifth Judicial District Court for the Parish of Plaquemines awarding $30 per week for total, permanent disability to the plaintiff, Ralph Todd, Jr. Plaintiff answered the appeal, praying that the award in his favor be increased by the allowance of penalties and attorney’s fees'.because of the alleged arbitrary and capricious refusal of the defendants to offer to make timely payments of weekly compensation.
Plaintiff, at the time of the accident which caused his injuries, was “a derrick man” in the employ of the Sunnyland Contracting Co., Inc., and it is conceded that the said employer was engaged in a hazardous business — ;the drilling of wells— and that Todd’s work brought him into contact with hazardous features of the business of his employer.
On July 28, 1953, at about ten o’clock in the morning, the ends of Todd’s index and middle fingers of his right hand were mashed by a.large pipe. He is righthand-ed. It was necessary that the end phalanges and about one-half of the middle phalanges of each of these two fingers be surgically amputated, with the result that the plaintiff has remaining of his right hand thi thumb and the ring and the little finger which were in no way injured and about one-half of each of the other two, that is, the middle and the index fingers of the right hand. It is shown that the ends of the stumps of these fingers have healed as well as is possible in such cases and that, except for the loss of about one and one- *539 half phalanges of each of those two fingers and with such, disability as results, the hand is now restored as nearly as is possible to its former normal condition.
The question which is then presented is whether the plaintiff’s recovery should be based, on the specific injury, that is, the loss of one and one-half phalanges of each of the two fingers, o.r whether it should be based on the percentage of disability which results from the loss of these portions of these fingers, or whether the disability which has resulted is so great as to justify the conclusion that plaintiff is totally and permanently disabled from performing work of a nature substantially similar to that which he was performing at the time of the accident.
■ In an exhaustive opinión rendered by this Court many years ago, Wilson v. Union Indemnity Co., La.App., 150 So. 309, we held that when disability results from a specific injury, or from the loss of a specific member such as a -leg, a hand or a finger and the compensation which would be based on the disability is greater than would be the allowance for the loss of the specific member, the award should be based on the disability and not on the loss of the specific member. There has been no departure from this rule.
Since there can be no doubt from the testimony of both doctors, one on behalf of plaintiff and one on behalf of defendant, that the disability here is such that an award based even on partial disability would substantially exceed that which would be based on the specific loss of one and one-half phalanges of each of the two fingers, it follows that we must at once discard the possibility that an award should be based on specific loss of the phalanges of the two fingers.
The record shows that plaintiff, as a “derrick man”, was required to' be at the upper end of a well-drilling derrick about 150 feet high and there, by the use of a large clamp and large wrenches, to steer or guide extremely large and extraordinarily long pipes into position as they were raised with one end at the bottom and the other to the top of the derrick.
Plaintiff, in discussing his work as a derrick man, says that, as large pipes are pulled up by the derrick, he would have to force them into position and then tie them, and that in doing this he “would grasp the ends of the elevators and hold them until they could be ‘latched’ ” and that they would then hang on the elevators. He says that this operation requires considerable strength and ,a powerful grip and “if you fail to latch them it would pick them up four to six feet and drop them, and if anybody was under them you know what it would do.” He also said that in order to become a derrick man he had been a “rough neck for about a year” and that during that year he “would go up into the derrick and was learning” and that, after being a rough neck for about a year to learn to be a derrick man, a period of about three months was required.
■ Plaintiff also placed on the stand Robert Steele, who said that he had worked with Todd for about four months; that “Todd was working the derrick” while he, Steele, “was working on the floor.” He said that after the accident it was apparent to him that Todd could not do the same work which he had done before because
“he was latching elevators, and when it would come down it would hit the rotary and it didn’t seem he could latch the elevator. It was dangerous.”
A Mr. Taylor was placed on the witness stand by defendants for the purpose of Showing that the work such as Todd had been doing could be done by a man whose hand was at least as badly injured as was Todd’s. Taylor had lost all of the fingers of his left hand except the first joint of the index finger and the thumb. He was asked whether he could do the work of a derrick man and he said that he could and that he himself would frequently take the place of a derrick man and do that Work. He also said that he knew of three other men who worked on oil derricks after the loss of two or three fingers. He said that he had also known of a “derrick man with *540 a thumb missing.” However, Mr. Taylor is now himself a 'foreman and under him there is “a derrick man that does the work up there.” He was asked whether, with his phalanges missing-, he could “grasp anything with that hand as you used to grasp,” and he answered: “I don’t guess I could.” And most significant of all his statements was one to the effect that
“I couldn’t compete very well with a man that does not have any fingers missing, * * * he is liable to do things and I .may have a 'harder time doing, and it may take me a longer time, but I will get it done.”
After the examination of the evidence concerning the details of' the work which a. derrick man must do, we reach the conclusion that a derrick man should be classified as a skilled laborer. We base this conclusion to some extent on. the fact that in Fruge v. Pacific Employers Ins. Co., 226 La. 530, 76 So.2d 719, the Supreme Court, after granting a writ of certiorari, affirmed a holding of the Court of Appeal for the First Circuit, La.App., 71 So.2d 625, to the effect that a rough neck is a skilled laborer. We have no difficulty in concluding that the duties of a derrick man require somewhat greater skill and experience than that required of a rough neck and therefore, as we have stated, conclude that a derrick man is a skilled laborer.
It is w.ell settled that where a skilled laborer sustains such injuries as prevent his doing substantially the same work which he was doing prior to the accident which caused the injury, he is to be compensated not on the basis of the specific loss and not on the basis of the difference between his earning capacity after the accident and his earning capacity before, but is to- be considered as totally and permanently disabled. Consequently, we conclude that the District Court was not in error in holding that the plaintiff was permanently and totally disabled 'and therefore entitled to the maximum compensation of $30 per week for 400 weeks subject, of course, to credit for payments already made. It thus becomes- necessary that we consider the contention of the plaintiff that he is entitled to recover in addition to compensation, penalties and'attorney’s fees as provided in LSA-R.S. 22:658 where an insurer capriciously, arbitrarily and without just cause fails to make timely payments.
Although plaintiff contends that he is entitled to a judgment for penalties.and attorney’s fees solidarity against the employer and the employer’s insurer, it is quite obvious that where such penalties are allowed they are allowed only as against the insurer and not as against the employer. The section of LSA-R.S. 22:658 which is relied-on very plainly provides that such recovery shall be had from the insurer and makes no reference whatever to the employer.
Defendant contends that whatever view we may take of the extent of the injuries of plaintiff, it must have been obvious from.the outset that he was entitled to compensation substantially greater than that which was paid him and also greater than that amount which was offered in settlement after the suit was filed.
It is shown that during the progress of the, litigation, defendant insurer offered to plaintiff $350.00 in settlement of such liability as might remain after the payment of such weekly amounts as had already been made. The position of the insurer is that at that time there was no way of determining just what the extent of the injury was and that, so far as could be seen by an. examination of plaintiff, he had merely lost one and one-half phalanges of each of two-fingers and would therefore be entitled, on-that basis to compensation of just about the-amount which was tendered.
It is true that later it became apparent that the extent of the injury to plaintiff’s-hand, even on the partial basis, would have-entitled him to a greater amount than was. offered, but at the time defendants had no-evidence which was conclusive on this point.
We think that it was neither arbitrary nor capricious in allowing the matter to go to-suit and in the suit contending that plaintiff should be compensated on the basis of *541 the specific loss of certain portions of his fingers.
The claim for penalties and attorney’s fees was properly disallowed.
The judgment appealed from is affirmed at the cost of defendants-appellants.
Affirmed.