101 So.2d 478 (1958)
Duval Ray THOMAS, Plaintiff-Appellee,
v.
CROWN-ZELLERBACH CORPORATION, Defendant-Appellant.
No. 4592.
Court of Appeal of Louisiana, First Circuit.
March 17, 1958.
*479 Talley & Anthony, Bogalusa, for appellant.
Carter, Erwin & Carter, Franklinton, for appellee.
TATE, Judge.
Defendant employer appeals from the award to plaintiff of three hundred weeks' workmen's compensation. The appeal is answered by plaintiff Thomas, who requests that the maximum duration of the award be increased to four hundred weeks and also that penalties be assessed against defendant for the capricious non-payment of weekly compensation due.
The accident and disability are not contested. Defendant's primary defense is its contention that the plaintiff's failure to cooperate with medical treatment is the cause of his residual disability rather than the initial injury itself.
While Thomas was working at defendant's paper mill on October 27, 1953, his right arm was caught in a paper winding machine and seriously fractured. He was brought immediately to Dr. W. S. Harrell, who found that the compound facture was of both bones of the right forearm, the ulna and the radius. The arm was opened, and the fractures were reduced by transfixing and wiring the bone shafts and the smaller bone fragments resulting from the breaks.
While the radius healed without undue difficulty, the disabling non-union of the fractured ulna persisted for a considerable time, despite lengthy treatment, numerous casts, and further major surgery in the form of a bone graft. Defendant argues that the failure of the ulna to unite for so long, which is admittedly disabling, was due to Thomas' uncooperative attitude and his refusal to follow medical instructions.
Defendant's attempt to prove this defense is based upon evidence which allegedly shows that Thomas' recovery was inhibited or prevented by: (1) too frequent changes of casts at his request; (2) his refusal twice to let a cast be applied, once at a critical stage; and (3) his failure to seek out further treatment after June of 1956. *480 Pointed out also as evidence of an uncooperative attitude is Thomas' failure to accept light work tendered to him by defendant employer.
The burden is upon the employer to prove the defense that the employee's willful failure to co-operate with medical treatment, or his willful misconduct, is the cause of the continued disability, and the proof to sustain this defense must be clear, convincing, and conclusive. Edwards v. Shreveport Creosoting Co., 207 La. 699, 21 So.2d 878, Guillory v. Reimers-Schneider Co., La.App. 1 Cir., 94 So.2d 134, Williams v. Texsun Supply Corp., La.App. 1 Cir., 47 So.2d 93. In our opinion, as in that of the District Court, this burden has far from been met in the present case.
The charge that Thomas' non-cooperation prevented his full recovery is chiefly based upon the testimony of Dr. H. R. Soboloff, an orthopedic surgeon who first examined plaintiff in April of 1954 (about five months after the accident) and under whose treatment Thomas was, following surgery in September 15, 1954 (almost a year after the accident), until Thomas left this doctor's office following an acrimonious personal disagreement on February 9, 1955.
The suggestion that the requested changes of cast, more frequent than usual, constituted lack of cooperation is not too impressive, for the record is bare of the slightest implication that such changes made under medical supervisionwere made contrary to the advice of any physician or despite such medical advice that recovery might be delayed. To the contrary, Dr. Soboloff's own testimony indicates that in the instances he himself prescribed or applied casts from April of 1954 until the date of Thomas' disagreement with him on February 9, 1955, Thomas faithfully followed Dr. Soboloff's instructions with regard to remaining in such casts. It is also interesting to note that Thomas' right radius, seriously fractured at the same time as the ulna, united without undue complication, although presumably subjected to the same effects of cooperation or lack thereof on the part of Thomas.
Likewise Thomas' request on the occasion of his initial examination by Dr. Soboloff in April, 1954, that the new cast be applied by his attending physician rather than the new specialist, cannot be regarded as non-cooperation. Both doctors agreed to the request. Further, Dr. Soboloff's report at the time (see footnote 1 below, report of June 29, 1954) indicates no adverse effects resulted.
While Dr. Harrell, the attending physician, thought that Thomas, a young unmarried man of 23, manifested an uncooperative attitude at times by using his encasted arm more than common sense would dictate (such as by driving a car), which might have prolonged Thomas' recovery; essentially, the chief support in his testimony for the defense of non-cooperation is his feeling that Thomas' refusal to have a cast replaced about his arm on February 9, 1955 (about fifteen months after the accident) and for five days thereaftercoming at a critical stage following the bone graft operation in the September previousmay have contributed to the delay in the union of Thomas' ulna following this operation.
It should be remarked that Thomas remained under Dr. Harrell's treatment after the accident of October, 1953, for almost three years, or until June of 1956 (after defendant terminated the payment of weekly compensation to Thomas.) Following the injury, Thomas' right fore-arm was in a series of casts until April 11, 1955, 17½ months later, when the cast was finally removed. (The evidence is conflicting as to whether Thomas' involvement in an automobile accident in November, 1954, prolonged this duration.) Although Dr. Harrell found that union of the ulna had finally occurred by May of 1956, he felt that because the bones were not fully stable enough Thomas was disabled from performing heavy work or putting his arm again to heavy work such as he had been performing.
*481 Thus, Thomas' arm was in a cast for most of 17½ months; and, except for five days following February 9, 1955 (which was over 15 months after the accident and almost 5 months after the curative surgery) during this prolonged period, Thomas wore casts when prescribed by physicians, and never failed to do so or changed casts despite contrary medical advice. In addition, he voluntarily accepted major surgery in the form of a bone graft, at the same time as accepting additional surgery transplanting a tendon to replace one worn through and severed by the protruding end of an intermedullary nail initially used in the fixation of the fractured radius, so that he could regain the use of his thumb.
We are unable to say that, considering the whole course of his prolonged medical treatment, Thomas did not cooperate with the attending physicians. We further feel that Dr. Soboloff's opinion that the bone graft performed by him on September 1, 1954, would have successfully ended plaintiff's disability if Thomas had not arbitrarily refused to have yet another cast applied on February 9, 1955 (which refusal he persisted in for 5 days until persuaded otherwise by Dr. Harrell), must be evaluated in the light of this physician's earlier too optimistic estimate of recovery even prior to the disagreement of February 9, 1955.[1] Such an opinion can at best be regarded as speculative.
We further note Dr. Harrell's testimony that the reason the fractured ulna was so long in uniting was that "it was the nature of the fracture itself, being one that was difficult to unite, union would have been slow in anyone" (Tr-67), as well as his testimony that even assuming union (which had allegedly been delayed by Thomas' failure to wear a cast for those five days) had taken place, Thomas was totally disabled from performing heavy labor.
As for defendant's final charge of non-cooperationthat Thomas did not report back to Dr. Harrell for further treatment after June of 1956it would appear that defendant employer is not in a position to complain of this, since this only occurred after it had terminated payment of workmen's compensation and denied further liability. In addition, by that time Dr. Harrell's medical attention was mainly confined to observation, and Dr. Harrell testified that he had not advised Thomas to return.
Readily distinguished from the present are cases sustaining the defense of non-cooperation relied upon by the defendant employer herein, such as Myles v. Forcum-James Co., La.App. 2 Cir., 16 So.2d 542, Reeves v. Union Sulphur Co., La.App. 1 Cir., 193 So. 399, and O'Niel v. M. W. Kellogg Co., La.App. 1 Cir., 190 So. 182, where evidence accepted by the trial court indicated that the claimant had wilfully refused to avail himself of means of recovery offered by his employer, which failure was definitely the cause of the continued disability.
Article XI of defendant's answer, and the testimony of two of its managerial employees, show that Thomas was offered light work as a cleaner's boy or night watchman when Dr. Harrell discharged him for light duty; and indicate that payment of compensation was terminated May 15, 1956, primarily because Thomas, attending trade school to learn drafting, refused such offer. The disabled employee is, however, under no obligation whatsoever to accept lighter or a different type' of work offered by his employer, nor is his *482 refusal to accept such an offer evidence of a lack of cooperation on his part. Watson v. Floyd Electric Co., La.App. 1 Cir., 75 So.2d 361, Brown v. International Paper Co., La.App. 2 Cir., 58 So.2d 557, Thornton v. Mercer, La.App. 2 Cir., 199 So. 407.
Termination of compensation for such a cause would indeed be arbitrary and capricious, as counsel for plaintiff Thomas argues in support of his demand based upon LSA-R.S. 22:658 for penalties and attorneys' fees, reiterated by his answer to the present appeal. However, the cited statutory section is found in the "Insurance Code" Title; penalties for arbitrary nonpayment of workmen's compensation cannot be assessed against an uninsured employer, such as is the present defendant, as the penalty provision applies only to compensation insurers and not to the employers themselves. Clifton v. Arnold, La.App. 1 Cir., 87 So.2d 386, Todd v. Sunnyland Contracting Co., La.App.Orl., 85 So.2d 537. Plaintiff's demand for penalties was, therefore, properly denied.
By answer to the appeal, plaintiff also prays that the judgmentwhich awarded him compensation for 300 weeks (less of course a credit for compensation paid), i. e., for temporary total disability under LSAR.S. 23:1221(1)should be amended so as to award compensation during disability, not to exceed 400 weeks, i. e., for permanent total disability under LSA-R.S. 23:1221(2).
As was earlier indicated, Dr. Harrell found Thomas able only to perform light duties at the time of his last examination in June of 1956; and of course a laborer is considered totally disabled under our compensation statute when unable to perform customary heavy duties of his occupation through a work-induced disability, Reed v. Calcasieu Paper Co., 233 La. 747, 98 So.2d 175. This medical witness made no estimate of the duration of such disability.
And Dr. Nick Accardo, an orthopedic surgeon and the only other medical witness as to Thomas' present condition, who examined him on January 18, 1957, found by x-ray that the non-union of the ulna had still persisted and in fact was only insignificantly changed from its condition as found by him on his earlier examination in August 15, 1955, 17 months earlier; the ulna being joined only by fibrous tissue rather than by a bony bridge. He likewise found Thomas totally disabled and was unable to estimate if the fracture would ever go on to bony bridge.
Where a claimant is totally disabled at the time of the trial, and the evidence does not indicate the duration of the disability or is conflicting as to whether the disability is permanent or temporary, compensation should be awarded for the maximum number of weeks, since the defendant employer is protected by the provision permitting periodic revision of the judgment after six months should the disability terminate or lessen. Peavy v. Calcasieu Paper Co., La.App. 1 Cir., 70 So.2d 755, Strother v. Standard Acc. Ins. Co., La.App. 1 Cir., 63 So.2d 484, Woodward v. Blair, La.App. 1 Cir., 197 So. 920. Plaintiff is thus entitled under the evidence to the maximum award.
For the above and foregoing reasons, the judgment is amended so as to award compensation at the rate of $30 weekly during disability, not to exceed 400 weeks, subject to a credit for compensation already paid; and as so amended, is affirmed in all other respects.
Amended and affirmed.
NOTES
[1] See Dr. Soboloff's medical reports: of April 17, 1954, Tr-29, "the patient can have a completely solid forearm if he will cooperate and will leave the cast undisturbed for the eight weeks period", which Dr. Soboloff subsequently admitted Thomas had done; at June 29, 1954 (or eight weeks later), at Tr-30, "good enough stability * * * patient can be started on active exercices * * * about six to ten weeks of physical therapy will be required for total rehabilitation of the patient".