AYRES, Judge.
This is an action for workmen’s compensation wherein plaintiff seeks to recover of his former employer the maximum statutory benefits provided for total and permanent disability. The matter is. before this court on plaintiff’s devolutive appeal from a judgment awarding him compensation for the permanent, partial loss of the use of a hand.
The position taken by plaintiff is that he cannot perform all the duties of his former employment by virtue of the injuries sustained and that, therefore, within the intent and purpose of the compensation statute, he is totally and permanently disabled. Defendant does not contest the award as made by the trial court nor the basis upon which it was made.
Defendant, however, strenuously contests plaintiff’s claim as to total disability. In this connection, the contention is made that the acts of which plaintiff proclaims his inability to perform constituted no part of his former employment, or, in the alternative, no substantial part of the duties of his employment. A further defense is made that plaintiff sustained neither temporary nor permanent disability by reason of his accidental injuries, and that he, therefore, is now, and has been, fully able to perform all the duties of his former employment.
The issues presented for resolution are purely factual in character. The trial court fixed and awarded compensation on a basis of a 20 percent loss of the use of a hand, as provided in the schedule of specific loss *207 es, particularly by LSA-R.S. 23:1221(4) (e).
The facts as to the injuries sustained by plaintiff may be briefly stated. They consist of the loss of the fourth, or ring, finger, laceration on the side of the middle finger, and a fracture of the fifth, or little, finger of the left hand. Examinations disclosed, however, that the thumb and index finger were involved in an old accident which, according to history, dated back almost SO years. There, however, was a full range of motion of the joints of the thumb as well as full range of motion at the meta-carpophalangeal and the first interphalangeal joints of the index finger. The distal joint of that finger was stiff.
Deemed essential to a discussion of plaintiff’s duties under his employment is an understanding of the nature of defendant’s operations. Defendant owns and operates a sawmill and planing mill. In connection with this business, it also owns and operates a “dimension” plant for the manufacture of furniture and novelty stock or parts as well as moldings. In this plant, materials from the sawmill are utilized which otherwise would probably constitute waste. The manufactured products are packaged, or bundled, in a “knocked-down” condition and then shipped to defendant’s customers. In the operation of this plant, various woodworking machines are used, such as planers, jointers, shapers, routers, tenoners, edgers, and saws, all power propelled.
During November, 1957, defendant employed plaintiff as superintendent of this “dimension” plant to supervise its operations. Plaintiff is a highly-skilled craftsman with a wealth of knowledge and experience, not only with woodworking machinery but in drafting, evident essentials in the successful operation of plants of this character. After his employment, he maintained an office in the plant, where he supervised the plant’s operations and instructed and directed the labor in operating the machinery and in the performance of the work, which included the assembly and installation of new machinery, if and when acquired, the making of adjustments in the machines, and the changing of knives, blades or other cutting devices as needed. Plaintiff designated the articles to be manufactured so as to fill orders on hand or anticipated, and acted as salesman for those products.
Salesmanship would appear to be a significant undertaking as a portion of the duties of plaintiff’s employment in view of a showing of traveling expenses of $1,479.-90, during the course of his eight months’ employment. His itinerary as a salesman included Arkansas, Oklahoma, Texas, and Illinois.
On the occasion of plaintiff’s injury June 4, 1958, which occurred while he was instructing an employee in the proper operation of a shaper, plaintiff inserted a piece of material in the machine for the purpose of manufacturing a Hollywood bedpost. The material was said to “kick out” and, due thereto, plaintiff’s hand to have been drawn into the cutters with the results as heretofore described.
Plaintiff continued in the performance of his duties notwithstanding the accident. The record establishes that plaintiff never lost a day from work, not even the day of the accident, but continued in his employment without complaints, at full wages, until July 15, 1958, when he voluntarily left defendant’s employ. Before leaving, a discussion, however, was had with Ellis S. Martin, president of defendant corporation, relative to his compensation. Martin expressed the desire and readiness of defendant to pay plaintiff compensation for the injuries sustained. No differences or controversy over this matter arose between them. Nevertheless, during Martin’s absence, plaintiff, without having given any previous notice, suddenly and abruptly, quit his employment and soon thereafter returned to Lubbock, Texas, his former residence, and secured employment, which he entered upon August 8, 1958, with the Western Woodwork & Manufacturing Company as head draftsman, supervising and checking *208 the drawings of his department, making estimates, and instructing the employees of the mill in the manufacture of the products undertaken. This position, he held at the time of trial. His salary exceeded that formerly paid by defendant.
In evaluating the merits of the legal controversy developed between the parties, reference must be made to the facts as established and disclosed by the record.
A conflict is noted in the testimony of the two principals involved relating to the first of the contentions advanced by defendant. Plaintiff testified his duties comprised not only supervision of the plant and its employees but the assembly and installation of the machinery, and the instruction of the employees in its use and operation, as well as his personal operation of the machinery. Just as positive and emphatic is the testimony of Martin that plaintiff was employed as superintendent of the plant and only in a supervisory capacity; that the other activities specified by plaintiff were no part of his employment; that the duties requiring manual labor were performed by others hired for the purpose; and, moreover, defendant did not employ plaintiff, and would not have employed anyone of plaintiff’s age of 67 years, to do manual labor. This testimony, being diametrically opposed, it cannot be said that plaintiff has sustained his burden of proof on this point.
Obviously realizing the apparent standoff in this testimony, plaintiff attacked Martin’s credibility. We find no just or sound basis for this action. On the contrary, the record reflects Martin’s continued high regard and respect for plaintiff’s ability.
Next, for consideration, is defendant’s alternative contention that if the aforesaid activities were held to be within plaintiff’s employment, they constituted only a minor and insubstantial part of his duties. We are impressed, from our review of the record, as was the trial court, with the merits of the position taken by defendant. The record leaves no doubt that the purpose for which plaintiff was employed was to serve as superintendent of the “dimension” plant, and that he was hired because of- his wealth of knowledge and vast experience in the operation of woodworking plants. In this position, as heretofore observed, he supervised the operation of defendant’s plant, instructed the workmen and directed their work, and also served as salesman for the plant’s products. Others were employed to perform the necessary manual labor, whether in the assemblage or installation of the machinery or its adjustments under plaintiff’s supervision.
Nor do we think the occasional operation of a machine for the purpose of instruction, constitutes a substantial part of plaintiff’s 'employment in the absence of any showing that he ever performed the duties of a regular operator of any of the machines.
We, therefore, find no manifest error in the conclusions reached by the trial court, that the activities of which plaintiff asserts an inability to perform were, in the first instance, no part of his employment and, secondly, if so, they constituted no substantial part thereof. Applicable is the general and prevailing rule expressed by Prof. Malone as follows:
“Where the employee can perform some but not all the duties incident to his former occupation the prevalent attitude is that those tasks he cannot do must constitute a substantial part of his work before he can be regarded as totally disabled. * * * ”
Malone’s “Louisiana Workmen’s Compensation,” page 332, § 274. Supporting the above rule are noted the following cases: Hibbard v. Blane, La.App. 2 Cir., 1938, 183 So. 39; Anderson v. May, La.App. 1 Cir., 1940, 195 So. 783; Washington v. Holmes & Barnes, Ltd., La.App. 1 Cir., 1941, 4 So.2d 51; Gray v. Bird & Son, Inc., La.App. 2 Cir., 1943, 12 So.2d 828; Barentine v. W. R. Aldrich & Co., La.App. 1 Cir., 1945, 20 So.2d 635; Vilce v. Travelers Ins. Co., La.App. 1 Cir., 1946, 24 So.2d 485; Breland v. Rainold-Van Denburgh, Inc., La. *209 App.Orl.1946, 24 So.2d 882; Boulanger v. Liberty Mutual Ins. Co., La.App. 2 Cir., 1947, 31 So.2d 888; Spillman v. L. O. Stocker Co., La.App. 1 Cir., 1949, 42 So.2d 136; Fontenot v. Goldenstern Pipe & Supply Co., La.App. 1 Cir., 1951, 50 So.2d 484; Scott v. Fulton Bag & Cotton Mills, La.App.Orl.1953, 65 So.2d 397. See, also, Jones v. Fidelity & Casualty Co. of New York, La.App. 2 Cir., 1952, 56 So.2d 870. (Where the evidence indicated worker was able to perform most of the operations required of a carpenter, he was regarded as not totally disabled despite the fact that his employer after the accident testified that he could not work as well as formerly-)
Therefore, in a final analysis, it becomes necessary to determine whether or not plaintiff has established, by a reasonable preponderance of the evidence, his inability, because of the accident, to perform the duties of his former employment. As heretofore pointed out, plaintiff continued in his former employment from and including the day of his accidental injuries, June 4, 1958, to July 22, 1958. Since entering upon his present employment August 8, 1958, he has continued to perform the same or very similar duties.
Moreover, the weight of the medical testimony supports the view that, notwithstanding a specific loss of a percentage of his hand, plaintiff, nevertheless, is and has been able to perform the duties of his former employment. Dr. V. W. Fletcher of Ringgold, the treating physician, testified that, upon his last examination of plaintiff July 22, 1958, the operative scar on the amputated finger was completely healed, as was the laceration on the middle finger. The complete recovery of the little finger was estimated to require an additional month. After an examination of August 5, 1958, Dr. E. C. Simonton, an orthopedist of Shreveport, evaluated plaintiff's disability, as of that time, at 10 percent. In a written report to plaintiff’s counsel, Dr. Simonton expressed, also, the opinion plaintiff was fully capable of returning to his previous occupation. The testimony of Drs. Willis J. Taylor and Ray E. King, orthopedists, was based, we think, upon the erroneous assumption that plaintiff was engaged substantially in the performance of manual labor, as evidenced by Dr. Taylor’s statement that the percentage of disability was determined by and applied to manual labor and as evidenced by Dr. King’s reference to the history related to him by plaintiff as to his employment. The record, in our opinion, abundantly shows, beyond any reasonable doubt, that plaintiff is capable of carrying on substantially the duties formerly performed by him.
We, therefore, find inapplicable to the facts of this case the general rule as recognized in McGruder v. Service Drayage Co., 183 La. 75, 162 So. 806; Barr v. Davis Bros. Lumber Co., 183 La. 1013, 165 So. 185; to the effect that whenever an employee can show that he was wholly or partially disabled, he is entitled to compensation for the period provided in the disability provisions of the statute, even though his disability arose from one of the specific losses set forth in the schedule (LSA-R.S. 23:1221(4) et seq.). The specific losses are now confined to situations where there is neither a total nor partial loss of disability. Boulanger v. Liberty Mut. Ins. Co., supra; Weber v. Kieckhefer Container Co., La.App.1950, 45 So.2d 562; Moore v. Aysen, La.App. 1 Cir., 1953, 69 So.2d 551; Dronet v. American Mutual Liability Ins. Co., La.App. 1 Cir., 1953, 69 So.2d 114; Todd v. Sunnyland Contracting Co., La.App.Orl. 1956, 85 So.2d 537; Trahan v. Louisiana State Rice Milling Co., La.App. 1 Cir., 1958, 100 So.2d 914; Green v. Harper, La.App. 2 Cir., 1958, 103 So.2d 474. See, also, Malone’s “Louisiana Workmen’s Compensation,” page 352, § 279.
Since plaintiff sustained the loss of a percentage of the use of a member of his body, unaccompanied by inability to perform the duties of his employment, his claim for compensation arises under the specific loss clause of the statute. Boulanger v. Liberty Mut. Ins. Co., supra; Jones v. Hunter Co., *210 La.App.1953, 68 So.2d 240; O’Connor v. American Mutual Liability Ins. Co., La.App.1956, 87 So.2d 16.
In the Boulanger case, notwithstanding the loss of an arm, plaintiff was shown capable of carrying on, substantially and efficiently, the duties of a glass cutter and, in fact, was shown, at the time of trial, to be actually performing such work in a satisfactory manner. Compensation was held payable under the specific loss clause and not under the provisions relating to permanent and total disability.
In the Hunter case, the employee sustained the loss of the distal phalanx and approximately one-half of the middle phalanx of the index finger. Compensation was awarded under the general provision on a basis proportionate to the loss of an entire finger.
In the O’Connor case, it was held that, where plaintiff sustained a 10 percent loss of the use of function of his left arm, the compensation payable was governed by the provisions of the statute relating to specific losses.
Plaintiff, in our opinion, was correctly awarded compensation for the permanent, partial loss of the function of his hand. Dr. Simonton estimated this loss, at the time of his examination August 5, 1958, at 10 percent; Dr. Taylor made an estimate of 22 percent and Dr. King 20 percent. The estimate of Dr. King was obviously accepted by the trial court. The award was accordingly based on that percentage of 65 percent of plaintiff’s weekly wages.
Plaintiff additionally contends that he should be awarded compensation as for total and permanent disability because he is only able to perform the duties of his employment while suffering pain. It is, of course, well recognized in the jurisprudence of this State that the law does not ex-' pect, contemplate, or require that an employee, in order to earn a living, work in pain. See Brannon v. Zurich General Accident & Liability Ins. Co., 224 La. 161, 69 So.2d 1, and the authorities therein cited. However, the evidence that plaintiff suffers substantial pain is unconvincing, and that he so suffers such pain is predicated almost entirely upon his own subjective complaints. Nor, in view of the nature of plaintiff’s injuries and his work record since the accident, could it be concluded, beyond a mere possibility, that plaintiff suffers pain to any substantial degree, even though there was some tenderness over the stump of the amputated finger and some of the medical experts suggested the possibility that a neuroma may have developed or that a nerve may have become entwined with the scar tissue in the healing of the wound. If this possibility were determined a reality, according to the medical experts, the remedy for any discomfort experienced therefrom constituted a very simple procedure which would result in a complete desensitizing of the area involved.
We find no basis for awarding plaintiff penalties and attorney’s fees. Such fees were sought under the provisions of the Insurance Code, LSA-R.S. 22:658. These provisions apply only to compensation insurers and not to employers themselves, and penalties, even in cases of arbitrary nonpayment of compensation, cannot be assessed against an uninsured employer under its provisions. Thomas v. Crown-Zellerbach Corporation, La.App.1958, 101 So.2d 478; Clifton v. Arnold, La.App.1956, 87 So.2d 386; Todd v. Sunnyland Contracting Co., La.App.1956, 85 So.2d 537. And, it may be noted that while penalties and attorney’s fees are not claimed under the Compensation Act, LSA-R.S. 23:1201.-2, as amended by Act 432 of 1958, the accidental injuries sustained by plaintiff preceded the enactment of that statute. Nor, in any event, do we find any basis for the infliction of penalties and attorney’s fees by virtue of any arbitrary or capricious action on the part of the defendant.
The judgment was in general terms based upon a monthly salary of $500, and did not spell out the award. By calculation, plain *211 tiff’s salary was $6,000 annually, or $115.38 weekly. Therefore, his weekly compensation rate — 20 percent of 65 percent of his weekly wage — is $15. The judgment should be amended so as to definitely fix the amount of compensation payable.
For the reasons herein assigned, it is ordered, adjudged and decreed that the judgment appealed be amended and, accordingly, there be judgment herein in favor of the plaintiff, R. E. Ernest, and against the defendant, Martin Timber Company, Inc., for the full sum and weekly compensation of $15 for a period of 150 weeks beginning June 11, 1958, with legal interest on each of said weekly installments from maturity until paid, and that, as thus amended, the judgment appealed be and it is hereby affirmed.
The plaintiff-appellant is assessed with the cost of this appeal.
Amended and affirmed.