124 So.2d 351 (1960)
Earl C. MONK, Plaintiff-Appellee,
v.
LOUISIANA FORESTRY COMMISSION et al., Defendants-Appellants.
No. 133.
Court of Appeal of Louisiana, Third Circuit.
November 17, 1960.
*352 Downs & Gremillion, by Field V. Gremillion, Alexandria, for defendant-appellant.
Gold, Hall & Skye, by Leo Gold, Alexandria, for plaintiff-appellee.
Before TATE, FRUGE and HOOD, JJ.
FRUGE, Judge.
Plaintiff instituted this suit against his employer, Louisiana Forestry Commission, and its insurer, praying for workmen's compensation benefits for total and permanent disability, together with statutory penalties and attorney's fees. From an adverse judgment defendant brings this appeal alleging that plaintiff was not totally and permanently disabled and that while there may be some degree of disability it is not total and permanent, and further that the penalties and attorney's fees were erroneously assessed against defendant and alternatively if it be found that they were rightfully assessed, then the attorney's fees in the amount of $2,500 are excessive.
There is no dispute that plaintiff, while performing his duties as a dragline operator, sustained injuries to his hand in the process of rigging a steel cable on the drum of the dragline that he was operating. The injury necessitated the amputation of plaintiff's right mid-finger with a resulting loss of full flexion in the stump and in the distal phalanx of the right ring finger. Plaintiff attempted to return to this type work, but after one and one-half hours his hand became swollen and fatigued and operation of the dragline caused extreme pain in his hand. The medical testimony conclusively showed that plaintiff could not "carry out his employment with the same dexterity" and "finesse" as before and that "there was an excellent chance that he would not be able to continue in that same type of work *353 doing a full days work over long periods of time". Dr. Banks, the medical expert for defendant, in response to the question whether or not plaintiff would be able to perform the same type work he did prior to the injury, answered thusly:
"Well, as we've stated before, I'm not familiar with the exact work he was doing, but theand the man does have a disability in his hand he does not have a normal hand, and, therefore, he would not be able to do exactly the same type of work with exactly the strength required and the long periods of time as he would if he had a normal hand." Emphasis supplied.)
When asked if he (Dr. Banks) considered it permanent, he answered "yes sir, * * *". Several witnesses also testified as to the possible danger and hazard to fellow workers that is created when an inefficient, awkward and slow dragline operator is at the controls. The testimony is clear that plaintiff suffers considerable pain in the severed digit and right hand and that hitting and knocking it increases his distress.
The test of total and permanent disability, as approved in Bean v. Higgins, Inc. and Columbia Casualty Company, 1956, 230 La. 211, 88 So.2d 30, 32, is:
"* * * whether the injured employee is capable of performing the work or the occupation in which he was engaged at the time of injury or whether he is able to do the kind of work he is trained to do or customarily does in the usual and customary way and without any serious impairment of his capacity to perform such work * * *' Reeve v. Clement-Braswell Machine & Fabricating Works, La. App., 66 So.2d 387, 390. See, also, Fruge v. Pacific Employers Ins. Co., La.App., 71 So.2d 625; Id., 226 La. 530, 76 So.2d 719; Morgan v. American Bitumuls Co., 217 La. 968, 47 So.2d 739; Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695 * * * In the case of Coon v. Germany Iron Works, La.App., 81 So.2d 83, 85, it was ably stated: `* * * with the pronouncements of those cases and with that in Carlino v. United States Fidelity & Guaranty Co., 196 La. 400, 199 So. 228, to the effect that a workman is deemed totally disabled * * * where a resumption of work following an injury causes great pain and suffering, we are in full accord' * * *". (Emphasis added.)
Also see Strother v. Standard Acc. Ins. Co., La.App., 63 So.2d 484, and Todd v. Sunnyl and Contracting Co., La.App.1956, 85 So.2d 537. In the case of Bassemier v. W. S. Young Construction Co., Inc., et al., La.App.1959, 110 So.2d 766, 768. Judge Tate approved of and used the following language:
"An employee is considered totally disabled within the meaning of the compensation act when he is unable to perform without pain the regular and usual duties of the occupation in which the injury was sustained, that is, to perform work of the same or similar character to that in which engaged at the time of the accident. Reed v. Calcasieu Paper Co., 233 La. 747, 98 So.2d 175; Brannon v. Zurich Gen. Acc. & Liab. Ins. Co., 224 La. 161, 69 So.2d 1; Thomas v. Crown-Zellerbach Corp., La.App. 1 Cir., 101 So.2d 478. The latter case also holds, with appropriate citation of authority, 101 So.2d 482: `Where a claimant is totally disabled at the time of trial, and the evidence does not indicate the duration of disability or is conflicting as to whether the disability is permanent or temporary, compensation should be awarded for the maximum number of weeks, since the defendant employer is protected by the provision permitting revision of the judgment after six months should the disability terminate or lessen.'" (Emphasis supplied.)
*354 Also see Murphy v. American General Insurance Company, La.App.1960, 122 So. 2d 100, 102, where this language was employed:
"After careful consideration of the record we have reached the conclusion that it justifies the factual finding that plaintiff was incapacitated from the performance of heavy manual labor of the nature in which he had been engaged prior to the accident, without pain, * * * under such circumstances he is clearly entitled to an award as for permanent total disability." (Emphasis supplied.)
In the case at bar the testimony of the medical experts, the lay witnesses and the findings of the trial court clearly demonstrate that the plaintiff is incapable of performing the same duties, in the same manner, and without pain as prior to the injury.
Coming to the question of penalties we find that defendant discontinued compensation payments on November 5, 1958. In order to justify this action it alleges that payments were discontinued on the basis of a letter, dated October 16, 1958 from Dr. Jarrell in which he stated that he had advised plaintiff to return to work, but that plaintiff was to return in a month for an examination. Defendant maintains that the October 16 report was the result of an examination made on October 5 and that November 5 was the term of the month referred to in the October 16 letter. Therefore, they maintain, that at month's-end they were justified, without a report, in discontinuing compensation. As a matter of fact, on November 3 plaintiff was examined and the findings thereof reported, in a letter dated November 11, to the effect that plaintiff could not "perform the same type work that he did prior to his injury with the same amount of dexterity" as before. Subsequent to the November 11 report plaintiff's counsel, on the basis of said report, made demand on defendant to recommence payments, but this demand was disregarded. Assuming, arguendo, that defendant was in good faith as to termination on November 5, nevertheless when it received the November 11 report from Dr. Jarrell and the demand from plaintiff's counsel it should have, if in good faith as to the original discontinuance, recommenced payments promptly. However, this was not done. In Seal v. Lionel F. Favret Company, Inc. et al., 1959, 238 La. 60, 113 So.2d 468, where the defendant in that case discontinued compensation on the basis of a medical report which stated that plaintiff could return to work on a trial basis, such action was held to be arbitrary and capricious and the court awarded penalties. Although the medical report relied on by defendant here did not specifically state that plaintiff was to work on a trial basis, defendant knew that plaintiff had not been discharged or released by Dr. Jarrell. The fact that plaintiff was to return for an examination could imply only one thing, that is, that the return to work was in fact on a trial basis. Furthermore, defendant was aware that at the very least plaintiff was entitled to some compensation since he had lost a finger by amputation! In Bassemier v. W. S. Young Construction Co., cited supra, Judge Tate adopted the language used in Patterson v. Cargo Services, Inc., La.App., 95 So.2d 49, 54 which is appropriate in this case:
"* * * [I]t seems clear that, where the insurer suspends the payment of compensation, notwithstanding that the employee is admittedly totally or partially disabled, it must be cast for costs and attorney's fees, should the employee ultimately be held entitled to compensation. It is a calculated risk that the insurer takes."
In view of the above facts and circumstances it is patently clear that defendant's actions were arbitrary and capricious. Regarding the penalty attorney's fees, although there is no proof in the record as to the reasonable value of such service, it is settled that in compensation cases *355 there is no necessity for such proof to be entered and that the court itself can fix the penalty attorney's fees. See Finn v. Delta Drilling Co., La.App.1960, 121 So.2d 340, and cases cited therein. (Writs refused by Supreme Court, October 6, 1960.) The award in this case is $2,500 which is approximately 20% of a judgment for total and permanent injuries exclusive of interest and other penalties. A casual perusal of the cases shows that this approximates those which have been awarded in the past.
Considering the facts and law as outlined hereinabove and based upon the record as a whole, we do not find the trial court manifestly erroneous.
For the foregoing assigned reasons the judgment of the trial court is affirmed. Costs of this appeal to be paid by defendant-appellant.
Affirmed.