SAMUEL, Judge.
This is a suit for total and permanent disability benefits under the Workmen’s Compensation Act. The defendant-employer has appealed from a judgment awarding compensation benefits at the rate of $35 per week for a period of 100 weeks, subject to a credit for compensation already paid by the defendant. Plaintiff has answered the appeal seeking total and permanent benefits, $35 per week for 400 weeks subject to the credit for compensation paid.
The fact that plaintiff suffered a com-pensable injury is not in dispute. He had worked for the defendant for approximately eight years and at the time of the accident, August 13, 1963, was doing heavy manual labor as a truck driver’s helper for which he received $2.63 an hour. While he was unloading a truck at one of the local supermarkets he fell from the truck to the pavement striking his back. He was taken to a hospital, where he remained for approximately a week, and was treated by defendant’s industrial surgeon, Dr. John Andrews, who died prior to the date of the trial of this case. During the course of treatment Dr. Andrews referred plaintiff to Dr. Irving Redler, an orthopedic surgeon, for examination and orthopedic evaluation. Plaintiff was discharged by Dr. Andrews less than 13 weeks after the accident. He received compensation benefits at the rate of $35 a week for 13 weeks. He did not return to work; Herrin refused to reemploy plaintiff and informed him his job had been abolished. In any event, because of illnesses unrelated to the accident, it is apparent he could no longer pass the physical examination required by the I. C. C. which had jurisdiction over Herrin. After his discharge by Dr. Andrews plaintiff received further treatment for the back injury and other medical problems from his own physician, Dr. Paul J. Murison, a specialist in the field of internal medicine.
Appellant contends that at the time of his discharge by Dr. Andrews plaintiff had completely recovered from the injury oc *232 casioned by the accident, that it has fully discharged its liability under the act by the compensation benefits paid, which benefits were not terminated until after the medical discharge and that any disability suffered by plaintiff after his discharge was and is due to his other illnesses and not to the fall from the truck. Plaintiff contends he remains totally disabled by the back injury.
The record contains the testimony of only four witnesses:, the plaintiff and his physician, Dr. Murison, who testified for the plaintiff; and Dr. Redler and a Herrin employee, who appeared for the defendant.
Plaintiff testified that prior to the accident he had been able to do his work despite the fact that he suffered from several serious illnesses, which we will mention later in this opinion, and since the accident he has been unable to work because of pain in his back and right leg. His duties as a truck driver’s helper consisted principally of manually loading and unloading heavy truck cargos. During November of 1963 he attempted to return to work for Herrin, was not allowed to return, and he has not worked since that time. He admitted he had suffered several accidents while in Herriri’s employ and had lost some short periods of time from work prior to the accident here involved.
Dr. Murison, plaintiff’s private physician, first saw him in August of 1961, two years before the accident, and thereafter treated him at various times. This doctor testified that, dating from the first time he saw plaintiff, his patient suffered from arterio-sclerotic disease, heart disease with angina, diabetes and some nervous tension. In addition he was overweight, even obese, and a heavy cigarette smoker. During the course of his treatment by Dr. Murison plaintiff lost and gained weight, stopped smoking and then went back to that habit, and his diabetes appears to have been controlled at times and uncontrolled at other times.
Dr. Murison saw plaintiff for the first time following the accident shortly after his discharge by Dr. Andrews. Plaintiff’s primary complaint at that time was concerned with an intense pain in the low back. In addition to his own examination and other evaluations Dr. Murison had Dr. Harry Morris, an orthopedic surgeon, examine plaintiff in connection with the back pain. While Dr. Morris did not testify as a witness, it appears from the record that he found no objective signs of anything orthopedically wrong with the plaintiff. Dr. Murison was of the firm opinion the back pain was caused by what he called diabetic neuritis which had been either initiated or aggravated by the accident. He felt that plaintiff did not have an orthopedic problem and that his back troubles were caused by the diabetic neuritis. He explained that such neuritis most often appears in the diabetic after trauma, usually does not respond immediately and precisely to good diabetic control and frequently persists, even with such control, far beyond what would be the case in a non diabetic, once the neuritis has started. Apparently medical science does not know what causes this Unusual neuritis to persist.
Dr. Murison was also of the opinion that the back pain totally incapacitated plaintiff from doing hard manual labor, While he stated the many other serious illnesses which plaintiff had were to some extent disabling, and this doctor was surprised that, despite those other illnesses, plaintiff had been able to do his work over the years prior to the neuritis, he felt the back pain caused by the diabetic neuritis was the disabling factor.
Dr. Redler examined plaintiff on one occasion on October 4, 1963 at the request of Dr. Andrews. Based upon this examination, X-rays and the history given by plaintiff it was his opinion that plaintiff’s injury consisted of a contusion of the lower part of the back. He could find no objective evidence to support plaintiff’s subjective complaints of back pain and was of the opinion that orthopedically plaintiff had completely recovered from the effects of the injury. However, Dr. Redler frankly *233 conceded that diabetic neuritis was not in' bis particular field, that his examination and conclusion were from an orthopedic standpoint only, and that he had occasionally seen patients with diabetes who suffered pain after trauma without objective evidence of orthopedic difficulties. He felt that in such cases the neuritis usually disappeared when the diabetes was brought under control. But he did not give this as his opinion because diabetic neuritis was not primarily an orthopedic problem.
The other defendant witness was a Her-rin employee who testified principally to plaintiffs previous record as to days absent from work prior to the accident, salary and other matters not particularly pertinent to plaintiff’s ability or inability to work as a result of the accident.
Plaintiff introduced as part of his evidence a letter dated October 31, 1963 addressed to him and written by the terminal manager of Herrin informing plaintiff he could no longer work for Herrin, which letter reads, in part, as follows: “Our doctor, Dr. John Andrews, has advised us that it is his opinion that you are no longer able to do driving nor the kind of work that is required of drivers or helpers in the Motor Freight Industry. Also, that you could not pass an I. C. C. physical at this time.”
As the record contains no medical or other evidence which contradicts the testimony and opinion of Dr. Murison relative to diabetic neuritis and its cause and effect in the instant case, and as we have no reason to doubt the same, we must accept that testimony and that opinion. We hold that the plaintiff has diabetic neuritis, which was caused, or at least aggravated, by his fall from the truck and which renders him incapable of doing manual labor of any reasonable character, and that, accordingly, he is totally and permanently disabled under the act.
Apparently the trial court’s award of $35 , per week for a period of 100 weeks, subject tó a credit for compensation already paid by the defendant, was made under authority of the schedule of specific losses, accompanied by a provision for the number of weeks compensation allowable in each instance, found under LSA-R.S. 23:1221(4) (a-p), particularly (p), which provides in part that in cases not falling within any of the provisions made in the preceding sub-paragraphs of (4), as for loss of members such as thumb, finger, toe, etc., “ * * * where the usefulness of a physical function is seriously permanently impaired, the court may allow such compensation as is reasonable and as in proportion to the compensation hereinabove specifically provided in the cases of specific disability, not to exceed sixty-five per centum of wages during one hundred weeks.”
The trial court award is erroneous. Plaintiff’s back injury makes him wholly disabled. No “specific disability” is here involved. And where the worker is wholly or partially disabled he is entitled to compensation at the rate and for the period provided in the disability provisions of the act even though such disability may arise from one of the specific losses mentioned in the schedule; the specific losses are confined to cases in which there was neither a total nor a partial disability. Barr v. Davis Brothers Lumber Co., 183 La. 1013, 165 So. 185; McGruder v. Service Drayage Co., 183 La. 75, 162 So. 806; Ernest v. Martin Timber Company, La.App., 124 So.2d 205; Weber v. Kieckhefer Container Co., La.App., 45 So.2d 562; Boulanger v. Liberty Mutual Ins. Co., La.App., 31 So.2d 888; Malone, “Louisiana Workmen’s Compensation”, page 352 § 279. We will amend the judgment accordingly.
It may be that since the trial of this case plaintiff has recovered from his diabetic neuritis and, if so, it is unfortunate that the defendant has not had either the reason or the opportunity to have him examined for the purpose of showing súch recovery. However, under the act (LSA-R.S. *234 23:1331) defendant will Have that opportunity in the future.
For the reasons assigned, the judgment appealed from is amended so as to award judgment in favor of plaintiff, Joseph R. Allen, and against the defendant, Herrin Transportation Company, for workmen’s compensation benefits at the rate of $35 per week, for a period not beyond four hundred weeks, subject to a credit for compensation already paid by the defendant. As thus amended, and in all other respects, the judgment appealed from is affirmed; all costs to be paid by the defendant
Amended and affirmed.